UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BRYON HAMILTON, et al., | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:24-cv-101 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| FISCHER SINGLE FAMILY HOMES IV, LLC. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS (DOC. NO. 5); AND, COMPELLING ARBITRATION**

---

Presently before the Court is the Motion to Dismiss (the "Motion") (Doc. No. 5), submitted by Defendant Fischer Single Family Homes IV, LLC ("Fischer"). Plaintiffs Bryon Hamilton ("Hamilton") and Rachel Mayberry ("Mayberry") (collectively, "Plaintiffs") have alleged three causes of action related to Fischer's performance on the Parties' contract for the construction of a single-family home in Centerville, Ohio. (Doc. No. 1 at PageID 4, 7-10.) Fischer now seeks to enforce the arbitration provision of the Parties' construction purchase agreement ("CPA") by moving the Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) and compel arbitration in accordance with the CPA. (Doc. No. 5 at PageID 24.) Fischer additionally argues for reimbursement of its attorney fees incurred in enforcing the CPA's arbitration provision here. (*Id.* at PageID 36-37.) Plaintiffs oppose the Motion on the ground that the arbitration clause within the CPA is legally unconscionable. (Doc. No. 8 at PageID 57.) For the reasons discussed below, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** Fischer's Motion to Dismiss and **COMPELS** arbitration.

1

I. **BACKGROUND**

In early 2021, Plaintiffs were engaged to be married and had begun searching for a marital home. (*See* Doc. No. 8-1 at PageID 78.) In particular, Plaintiffs wanted to purchase a home in Washington Township, Ohio. (*Id.* at PageID 79.) To that end, Plaintiffs sought out Fischer, a residential construction company headquartered in Kentucky and doing regular business in Ohio, to build their home. (*Id.*; *see also* Doc. No. 1 at PageID 3.)

On February 26, 2021, after finding a lot and floor plan that Plaintiffs considered suitable, Hamilton attended a video call with Fischer's sales representative. (Doc. No. 8-1 at PageID 79.) On the video call, Hamilton was presented with the CPA at issue in this case for the first time via the call software's share screen function. (*Id.* at PageID 79-80.) Upon first sharing the CPA, Fischer's sales representative instructed Hamilton to electronically sign and initial the CPA and Hamilton did so in short order. (*Id.* at PageID 80.) All told, the video call lasted only a "couple [of] minutes." (*Id.*) For her part, Mayberry fully executed the CPA the following day. (*Id.* at PageID 84; *see also* Doc. No. 5 at PageID 49.) There is no evidence or allegation in the record indicating that Fischer's representative explained the terms of the CPA to Plaintiffs or that Plaintiffs asked any questions regarding the CPA before signing.

One such term within the CPA was an arbitration clause. (Doc. No. 5 at PageID 47-48.) Pursuant to that clause, the Parties broadly agreed that any unresolved dispute between them would be settled by binding arbitration. (*Id.*) More specifically, the arbitration clause anticipated that:

> [A]ny unresolved [c]laim, regardless of the legal theory under which it is brought, shall be settled by binding arbitration administered by the Cincinnati, Ohio office of the American Arbitration Association pursuant to its Construction Industry Arbitration Rules and Mediation Procedures, except to the extent that specific arbitration provisions are set forth herein. Regardless of the location of the Property, the [c]laim shall be adjudged by using the current version of the Residential Construction Performance Guidelines published by the National Association of Homebuilders as the relevant and applicable building standards.

> Judgment on the arbitration award rendered by the arbitrators may be entered in a Kentucky state or federal court and shall be binding and conclusive as to the Parties and no appeal may be taken by any party.

(*Id.*) The CPA's arbitration provision proceeded to set forth a number of agreed arbitration procedures, including a requirement that any arbitration between the Parties take place in Kenton County, Kentucky, where Fischer is headquartered. (*Id.* at PageID 48.)

On April 4, 2024, Plaintiffs filed their Complaint for Money Damages and Other Relief (the "Complaint") (Doc. No. 1), alleging three causes of action related to Fischer's performance on the CPA: (1) violation of the Ohio Home Construction Service Suppliers Act, Ohio Rev. Code § 4722.01, *et seq.*; (2) breach of contract; and, (3) fraud. (Doc. No. 1 at PageID 7-10.) Fischer filed the instant Motion on May 29, 2024. (Doc. No. 5.) Plaintiffs then submitted Plaintiffs' Memorandum Contra to Defendant's Motion to Dismiss (the "Response") (Doc. No. 8) on July 3, 2024, and Fischer filed its reply in support of the Motion on July 16, 2024 (Doc. No. 9). Fischer's Motion is now ripe for review and decision.

**II.    STANDARD OF REVIEW**

"The proper vehicle for dismissing a case in favor of arbitration is pursuant to Fed. R. Civ. P. 12(b)(6)." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp. 3d 1257, 1262 (S.D. Ohio 2020). Put simply, a party who seeks to litigate a cause of action in federal court despite the existence of an otherwise compulsory arbitration agreement fails to state a claim. *Id.* (quoting *Knight v. Idea Buyer, LLC*, 723 F. App'x. 300, 301 (6th Cir. 2018)).

Typically, "[t]he purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993)). "[F]or the purposes of a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its

3

allegations taken as true." *Id.* (citation omitted).

This standard differs, however, where Rule 12(b)(6) has been invoked to dismiss an action in favor of arbitration. *Pinnacle Design*, 490 F. Supp. 3d at 1262 (citation omitted). In such circumstances, a court's determination is not necessarily based on the viability of a plaintiff's claim, "but, instead, concerns whether [the court] or an arbitrator should hear it." *Id.* When faced with an arbitration agreement, courts are to remain mindful of the strong federal policy in favor of arbitration. *Trout v. Univ. of Cincinnati Med. Ctr., LLC*, No. 1:22-cv-36, 2022 U.S. Dist. LEXIS 147829, at *3, 2022 WL 3446349, at *1 (S.D. Ohio Aug. 17, 2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Federal policy further dictates that courts analyze the enforceability of an arbitration agreement pursuant to "state-law principles governing contract formation . . ." *Walker v. Nautilus, Inc.*, 541 F. Supp. 3d 836, 840 (S.D. Ohio 2021) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

By any standard, a district court considering a Rule 12(b)(6) motion, "'may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to [movant's] motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein . . .'" *Pinnacle Design*, 490 F. Supp. 3d at 1262 (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)). Courts are generally permitted to construe what matters "fall within the pleadings for purposes of Rule 12(b)(6)" quite liberally. *Pinnacle Design*, 490 F. Supp. 3d at 1262 (citing *Armengau v. Cline*, 7 F. App'x. 336, 344 (6th Cir. 2001)). Still, courts must only consider supplemental documentation when deciding a Rule 12(b)(6) motion where it is "'clear that there exist no material disputed issues of fact concerning the relevance of the document[s].'" *Pinnacle Design*, 490 F. Supp. 3d at 1262 (quoting *Mediacom Se. LLC v. Bellsouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir.

4

2012)).

At present, the Parties have supplemented their briefings by attaching the CPA and the American Arbitration Association's Construction Industry Arbitration Rules and Mediation Procedures. (Doc. Nos. 5 at PageID 40-50; 8-1 at PageID 86-141.) Plaintiffs' Complaint explicitly refers to the CPA and its terms. (*See e.g.*, Doc. No. 1 at PageID 4 ("Plaintiffs and Fischer Homes entered into a contract for the construction and purchase of a single-family home . . .").) The CPA, in turn, refers to the American Arbitration Association's Construction Industry Arbitration Rules and Mediation Procedures. (*See* Doc. No. 5 at PageID 47.) The Court finds no dispute regarding the relevance of these supplemental documents and may appropriately consider them in deciding Fischer's Motion. *Pinnacle Design*, 490 F. Supp. 3d at 1262 ("Here, there is no material disputed issue of fact that both the Master Agreement (referred to in and attached to [plaintiff's] [c]omplaint) and the AAA Rules (referred to in the Master Agreement and attached to [defendant's] [m]otion to [d]ismiss) are relevant to the question presented to the Court for review").

### III. ANALYSIS

Fischer argues that the Court should dismiss this action and compel the Parties to arbitrate in keeping with the strong federal policy in favor of arbitration. (Doc. No. 5 at PageID 31.) Alternatively, Fischer moves to enforce the CPA's forum selection clause. (*Id.* at PageID 35.) Finally, Fischer asserts its entitlement to its attorney fees incurred in enforcing the CPA by way of the current Motion. (*Id.* at PageID 36-37.)

As an initial matter, the Federal Arbitration Act, namely 9 U.S.C. § 2, provides that when a contract involving commerce contains an arbitration provision, that provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ." 9 U.S.C. § 2. The Sixth Circuit has instructed that courts faced with an

arbitration provision must—construing all ambiguities in favor of arbitration—determine: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted . . . whether Congress intended those claims to be nonarbitrable"; and, (4) if "some, but not all, of the claims in the action are subject to arbitration . . . whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l. Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

Here, Plaintiffs do not dispute the existence of the Parties' agreement to arbitrate, nor do Plaintiffs dispute that their claims in this action fall entirely within the ambit of the CPA's arbitration provision. Instead, Plaintiffs rally behind the equitable doctrine of unconscionability to revoke the CPA's arbitration clause. (*See* Doc. No. 8 at PageID 62-63.)

Accordingly, the Court's analysis will focus on whether the CPA's arbitration provision is unconscionable under Ohio law.[1] The Court will then conclude by considering whether to award Fischer its attorney fees.

### A. <u>Unconscionability</u>

In Ohio, unconscionability is recognized as an equitable "ground for revocation of a contract." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (Ohio 2008) (citing *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 865 (Ohio 1998)). "Unconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) (quoting *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 189 (Ohio 1993)) (citations and

---

[1] Because the Court ultimately finds the subject arbitration provision to be legally conscionable, the Court need not address Fischer's alternative arguments pertaining to forum selection. Accordingly, the Court makes no finding with respect to the CPA's forum selection clause.

internal quotation marks omitted). The former is characterized as procedural unconscionability, while the latter defines substantive unconscionability. *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993) ("Unconscionability thus embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., 'substantive unconscionability,' and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., 'procedural unconscionability' . . ."). The party asserting the unconscionability of an agreement necessarily "bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Taylor Bldg.*, 884 N.E.2d at 20 (citations omitted).

### i. Procedural Unconscionability

Regarding procedural unconscionability, Plaintiffs offer arguments that their bargaining power was vastly outweighed by that of Fischer when negotiating the CPA. (*See* Doc. No. 8 at PageID 65.) Plaintiffs contend that, while Fischer "is sophisticated in the construction business," they had "never entered into a home construction contract before contracting with [Fischer]." (*Id.*) Moreover, Plaintiffs submit that the CPA's arbitration provision constitutes a suspect contract of adhesion, the terms of which they felt precluded from negotiating. (*Id.* at PageID 65-66.) To color in these arguments, Plaintiffs describe their desperation to find the perfect marital home in a housing market where lots acceptable to them were selling quickly. (*Id.* at PageID 65.) In the end, Plaintiffs allege that Fischer had such "supreme bargaining power" that they believed their chances of finding their dream home were nonexistent if they did not sign the CPA. (*Id.*)

On the other hand, Fischer claims that Plaintiffs did not suffer from such disparate bargaining power as to render the CPA's arbitration provision procedurally unconscionable. (Doc. No. 9 at PageID 145-46.) Fischer argues that, under Plaintiffs' theory, "every contract between a

7

company and individual would be unconscionable." (*Id.*) In particular, Fischer highlights the lack of evidence to show that Plaintiffs were incapable of understanding the CPA, that Plaintiffs paused to review the CPA and ask questions before signing, or that Plaintiffs attempted to negotiate the terms of the CPA to no avail. (*Id.* at PageID 146, 149.)

When looking to whether an arbitration agreement is procedurally unconscionable, courts must generally base their determination on the totality of the circumstances. *Hayes*, 908 N.E.2d at 414 ("All of the factors must be examined and weighed in their totality in determining whether an arbitration agreement is procedurally unconscionable"). In short, "[p]rocedural unconscionability . . . concerns the formation of the agreement, and occurs when one party has such superior bargaining power that the other party lacks a 'meaningful choice' to enter into the contract." *Thomas v. Hyundai*, 154 N.E.3d 701, 709 (Ohio Ct. App. 2020) (citing *DeVito v. Autos Direct Online, Inc.*, 37 N.E.3d 194, 201 (Ohio Ct. App. 2015)).

However, "inequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." *Taylor Bldg.*, 884 N.E.2d at 23 (citing *Vanyo v. Clear Channel Worldwide*, 808 N.E.2d 482, 487 (Ohio Ct. App. 2004)). Rather, the party seeking to establish procedural unconscionability must demonstrate a confluence of factors, including the contracting parties' "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods [or services] in question." *Collins*, 621 N.E.2d at 1299 (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)) (internal quotation marks omitted); *see also Hayes*, 908 N.E.2d at 413 (quoting *Taylor Bldg.*, 884 N.E.2d at 22). Additional factors for a court's consideration include evidence of bad faith such as:

8

> belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.

*Hayes*, 908 N.E.2d at 413 (quoting *Taylor Bldg.*, 884 N.E.2d at 22-23).

Contracts with adhesive characteristics are inherently suspect when determining whether an agreement to arbitrate is procedurally unconscionable. *Williams*, 700 N.E.2d at 866 (arbitration clause with adhesive aspects "necessarily engender[ed] more reservations than an arbitration clause in a different setting"). Contracts of adhesion have been defined as "'standard-form contract[s] prepared by one party, to be signed by the party in a weaker position, usually a consumer, who has little choice about the terms.'" *Popora v. Gatliff Bldg. Co*, 828 N.E.2d 1081, 1084 (Ohio Ct. App. 2005) (quoting Black's Law Dictionary (7th Ed. 1999) 318-319). Yet, "even a contract of adhesion is not in all instances unconscionable *per se*" because "'few consumer contracts are negotiated one clause at a time.'" *Taylor Bldg.*, 884 N.E.2d at 24 (quoting *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004)) (*alteration added*). To be sure, an agreement with adhesive characteristics may nonetheless be procedurally conscionable so long as the weaker party was afforded a "realistic opportunity to bargain." *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1179 (Ohio Ct. App. 2004) (citations and internal quotation marks omitted).

Returning to the case at bar, the Court cannot find that the CPA's arbitration provision is procedurally unconscionable. The Court does accept that Plaintiffs possessed lesser bargaining power when compared to Fischer. The transaction between the Parties was the first of its kind for Plaintiffs and business as usual for Fischer. However, the Parties' disparate bargaining power does not, on its own, evidence procedural unconscionability. Fischer's sales representative may not have explained the CPA's arbitration clause to Plaintiffs, but the clause was not hidden in fine

9

print. *Ball v. Ohio State Home Servs.*, 861 N.E.2d 553, 556 (Ohio Ct. App. 2006) ("the Ohio Supreme Court [has] held that there is no requirement that an arbitration clause be explained orally to party prior to signing when the provisions at issue were not in fine print . . .") (citations and quotation marks omitted). Moreover, Plaintiffs did not stop to ask questions of Fischer's representative or otherwise attempt to negotiate the CPA.

Plaintiffs call out their desperation to build their dream home as evidence that Fischer took advantage of their lesser bargaining power. (Doc. No. 8 at PageID 65.) Though, Plaintiffs offer no evidence that Fischer actually took advantage of their desperation. Rather, the record in this case indicates that Plaintiffs knew the state of the housing market and acted with self-imposed haste. There is no evidence to conclude that either Fischer or its representatives communicated that the CPA was being offered on a "take it or leave it" basis. Neither is there evidence that Plaintiffs did not have a reasonable opportunity to understand the terms of the CPA. Hamilton may have seen the CPA for the first time on a video call with Fischer's representative, but Plaintiffs have not so much as alleged that they either wanted to ask questions and could not, or that they asked questions only to be shot down and told to sign the CPA.

For good measure, the record before the Court suggests that Plaintiffs, by their own motivations, acted quickly to secure their dream home, but without regard for the details of the agreement meant to put them there. Plaintiffs' position is nothing if not understandable. Nevertheless, it does not establish procedural unconscionability. Consequently, the Court finds the Parties' arbitration agreement to be procedurally conscionable under the facts presented here.

### ii. Substantive Unconscionability

Having found that the CPA's arbitration clause was not procedurally unconscionable, the Court "need not address whether it was also substantively unconscionable." *John R. Davis Trust*

10

*8/12/05 v. Beggs*, 2008-Ohio-6311, at ¶ 21 (Ohio Ct. App. 2008).  Notwithstanding, the Court does find that the CPA's arbitration clause contained two substantively unconscionable terms and takes this opportunity to sever those terms from the agreement before compelling arbitration.  *DeVito*, 37 N.E.3d at 206 ("While inherently unfair language can and should be stricken, there is no authority inherent in this court to carte blanche strike down an otherwise valid arbitration agreement").  The Court "will not overreach by attempting to invalidate the entire arbitration agreement when excision of the offending portion will suffice." *Id.*

To table-set, "[a]n assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes*, 908 N.E.2d at 414 (citing *Beggs*, 2008-Ohio-6311 at ¶ 13).  There is "[n]o bright-line set of factors for determining substantive unconscionability." *Hayes*, 908 N.E.2d at 414.  When determining whether an agreement is substantively unconscionable, Ohio courts have previously considered factors such as "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes*, 908 N.E.2d at 414 (citing *Beggs*, 2008-Ohio-6311 at ¶ 13; *Collins*, 621 N.E.2d at 1299).  Though, "[t]he factors to be considered vary with the content of the agreement at issue." *Hayes*, 908 N.E.2d at 414.

The first substantively unconscionable provision of the CPA's arbitration clause in this case takes the form of a "loser pays" provision.  The relevant clause provides that all costs and fees incurred in the course of arbitration of this matter shall be awarded to the prevailing party.  (Doc. No. 5 at PageID 48.)  Such provisions induce a chilling effect, leaving consumers exposed to the commercially unreasonable possibility that they may bring a nonfrivolous, but unsuccessful, claim and be forced to pay the exorbitant costs of a commercial entity all the same.  *Devito*, 37

N.E.3d at 202-03.  Therefore, the Court finds the "loser pays" provision contained in the CPA's arbitration clause to be substantively unconscionable and hereby **SEVERS** the provision from the Parties' agreement.

The second substantively unconscionable term in the Parties agreement to arbitrate here is the requirement that any arbitration under the CPA be conducted in Kenton County, Kentucky. (Doc. No. 5 at PageID 48.)  Ohio statute mandates, as a matter of public policy, that:

> Any provision of a construction contract, agreement, understanding, specification, or other document or documentation that is made a part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that requires any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding to occur in another state is void and unenforceable as against public policy. Any litigation, arbitration, or other dispute resolution process provided for in the construction contract, subcontract, agreement, or understanding shall take place in the county or counties in which the improvement to real estate is located or at another location within this state mutually agreed upon by the parties.

Ohio Rev. Code § 4113.62(D)(2).  This statute cannot be any clearer.  The CPA was executed by Plaintiffs in Ohio.  Further, the CPA was entered into by the Parties for the construction of residential property in Montgomery County, Ohio. (Doc. No. 5 at PageID 40.)  The Court finds that it would be fundamentally unfair and commercially unreasonable—and, therefore, substantively unconscionable—to permit the Parties to subvert explicit public policy by agreeing to arbitrate this matter in Kenton County, Kentucky.  Accordingly, the Court hereby **SEVERS** the term requiring arbitration to occur in Kenton County, Kentucky from the CPA's arbitration provision.  Any arbitration related to the CPA at issue here must be held in Montgomery County, Ohio by default, or at another location in Ohio by agreement of the Parties.

Ultimately, with the removal of these noxious terms, the Court finds the CPA's arbitration provision to be substantively conscionable and finally **COMPELS** the Parties to arbitration.

B. **<u>Attorney Fees</u>**

Lastly, the Court considers Fischer's prayer for an award of its attorney fees incurred in filing the present Motion. Fischer relies solely on a clause within the CPA which requires Plaintiffs to pay all of Fischer's "out-of-pocket expenses, including attorney fees" if Plaintiffs fail to "strictly adhere to the dispute resolution procedure set forth in [the CPA]." (Doc. No. 5 at PageID 37, 49.) Whereas, Plaintiffs argue that the CPA's fee shifting clause is unenforceable by virtue of their lesser bargaining power when executing the CPA. (Doc. No. 8 at PageID 75.)

The Court finds that it need not reach the issue of whether to award Fischer its attorney fees incurred in bringing its Motion. For the reasons discussed above with respect to procedural unconscionability, there is insufficient evidence to find that Plaintiffs had such measly bargaining power that the CPA's fee shifting clause is *per se* unenforceable. Additionally, despite the one-sidedness of the fee shifting clause at bar, the provision is not so oppressive on its face that it solely operates as a penalty.

The Court has already found the CPA's arbitration clause to be enforceable—albeit with two terms severed. In light of the enforceable arbitration agreement between the Parties, the meaning and enforceability of the CPA's fee shifting provision is best decided by an arbitrator. *Taylor Bldg.*, 884 N.E.2d at 28 (citing *Hawkins v. Aid Assn. for Lutherans*, 338 F.3d 801, 807 (7th Cir. 2003)) ("Because the arbitration clause itself is enforceable, the question of the meaning of [the fee shifting provision] and its enforceability under Ohio law, like that of other contract terms, will be for the arbitrator in the first instance"). In other words, the Court will not compel arbitration with one breath and then usurp the arbitrator's authority with the next. As such, the Court **DENIES** Fischer's Motion insofar as it moves for an award of attorney fees.

IV. **CONCLUSION**

For the reasons explained herein, the Court **GRANTS, IN PART,** and **DENIES, IN PART,** Fischer's Motion to Dismiss (Doc. No. 5) and finds the following:

1. The Parties' agreement to arbitrate is not procedurally unconscionable;

2. The Parties' agreement to arbitrate contained two substantively unconscionable terms. The Court hereby **SEVERS** those terms from the CPA in accordance with the Court's foregoing rationale. With this severance, the Court finds the Parties arbitration agreement to be substantively conscionable;

3. In light of the Parties' enforceable arbitration agreement, the Parties are hereby **COMPELLED** to arbitrate the instant controversy in Montgomery County, Ohio, or at another location in Ohio by agreement of the Parties;

4. The Court **DENIES** Fischer's Motion to Dismiss (Doc. No. 5) to the extent that it moves for an award of attorney fees, in deference to the judgment of the arbitrator(s); and,

5. The Court hereby **DISMISSES** this action pursuant to Fed. R. Civ. P. 12(b)(6).

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, August 2, 2024.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE